# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| GRETA K. CLOUD | : | |
| Plaintiff, | : | |
| | | Case No. 3:11cv00007 |
| vs. | : | |
| | | District Judge Walter Herbert Rice |
| MICHAEL J. ASTRUE, | : | Magistrate Judge Sharon L. Ovington |
| Commissioner of the Social | | |
| Security Administration, | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

## I.     INTRODUCTION

Plaintiff Greta K. Cloud brings this case challenging the Social Security Administration's denial of her application for Disability Insurance Benefits ("DIB") filed in January 2005, alleging disability since May 15, 2004.  (Tr. 51-53).  She claims disability from severe asthma, emphysema, depression, and bi-polar disorder.  (Tr.  55).

After various administrative proceedings, Administrative Law Judge ("ALJ") Steven H. Templin, denied Plaintiff's DIB application based on his conclusion that Plaintiff's impairments did not constitute a "disability" within the meaning of the Social Security Act.  (Tr. 13-24).  The ALJ's nondisability determination and the resulting denial of benefits later became the final decision of the Social Security Administration.  (Tr. 5).

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

Such final decisions are subject to judicial review, *see* 42 U.S.C. § 405(g), which Plaintiff is now due.

This case is before the Court upon Plaintiff's Statement of Errors (Doc. #5), the Commissioner's Memorandum in Opposition (Doc. #6), the administrative record, and the record as a whole.

Plaintiff seeks a reversal of the ALJ's decision and remand for payment of benefits. The Commissioner seeks an Order affirming the ALJ's decision.

## II.    **Background**

### A.    **Plaintiff's Vocational Profile and Testimony**

Plaintiff was 47 years old on the alleged disability onset date. Thus, she is considered to be a "younger individual" for purposes of resolving her DIB claim. *See* 20 C.F.R. § 404.1563(c); *see also* (Tr. 51, 62).

Plaintiff has a high-school education and completed "beauty school." (Tr. 60). She has worked as a hairdresser, letter sorter/data input clerk, and waitress. (Tr. 56, 94-102).

Plaintiff testified at the administrative hearing that she was diagnosed with emphysema in 1994, (Tr. 309), but still was able to work for ten years after the diagnosis. *Id.* She stopped working after being fired following an asthma attack she suffered while waitressing. (Tr. 310). She explained that she had to leave the floor due to the asthma attack and did not have time to tell her supervisor beforehand. *Id.* Plaintiff also testified that since 2004 she has had pressure-type chest pain "almost all the time," and that such

2

pain is sometimes sharp. *Id.* The sharp pains occur "about three or four times a week." (Tr. 311). Plaintiff reported that her height is 5' 6" and that she weighs 184 pounds. *Id.* Plaintiff testified that she uses a bronchodilator "that doesn't really affect [her] breathing." *Id.*

She further testified that she experiences coughing fits and wakes up coughing. (Tr. 312). Her coughing fits have caused her to have nose bleeds, and lose bowel and bladder control. *Id.* She testified that she has lost control of her bladder as often as 10 times per day, (Tr. 312-13); her coughing fits most often occur in the morning when she wakes up, and last for approximately 15 minutes; and she uses a nebulizer to improve her breathing. (Tr. 315). She testified she feels "jittery" as a result of using the nebulizer. (Tr. 316).

Plaintiff testified that she probably drank alcohol on two or three occasions in the past 6 years, (Tr. 313), and that during each occasion she probably only had 6 beers. She testified that since Lorazepam was prescribed to her, she has not consumed any alcohol. (Tr. 314). In the 1990's she underwent an alcohol rehabilitation treatment. (Tr. 322-23).

Plaintiff testified that she has no energy, (Tr. 316), cannot rake leaves or "do anything I used to do." (Tr. 316-17). At home, her children (ages 12 and 15) do most of the housework. (Tr. 317). She "chips in," but can only do the dishes for about 10-15 minutes before she needs to sit down. (Tr. 317-18). She goes grocery shopping with her children, but testified she will often lose control of her bladder while at the store. (Tr. 318). Typically, she spends her day on the couch laying down. *Id.* Sometimes she can

3

sit up to read a book.  *Id.*  She estimated that she spends 50% of her day laying down.

(Tr. 319).  When asked if she thought she would be able to sit most of the day, she

responded, "I just can't even picture doing that." *Id.*  She estimated she could sit 15

minutes, and could stand for 15 minutes at one time.  (Tr. 320).  She acknowledged she

could lift a gallon of milk, but states that is about the limit of what she can lift.  *Id.*

     She testified that her medications make her drowsy, and her depression makes her

feel like not going anywhere.  (Tr. 320-21).  She testified that she cried "everyday,

probably." (Tr. 321).  She acknowledged that she had received mental health treatment in

the past, but had last received treatment approximately 5 years before the hearing.  *Id.*

     Plaintiff testified that she is without any income, and only sporadically receives

child support from the father of her daughters.  Instead, she explained that her uncle

supports her children.  (Tr. 322).

    **C.**    **Medical Opinions**

**Harold Brown, D.O.**

     The record contains treatment notes from Dr. Brown dated from October 1993 to

November 2005.  (Tr. 124-87, 213-27, 233-55, 264-72).  In May 2004 he noted

depression, with irritability, and anxiety, as well as alcohol use.  (Tr. 130).  A pulmonary

function study (PFS) in January 2002 showed mild chronic obstructive pulmonary disease

(COPD).  (Tr. 165-66).  A PFS in August 2003 showed moderate COPD.  (Tr. 162-63).

Plaintiff underwent a PFS in July and November 2004; and February, March, and April

4

2005; which showed mild COPD.  (Tr. 155-56, 158-61, 241-42, 244-45).  Chest x-rays from 2005 were normal.  (Tr. 157).

At the request of the Ohio Department of Job and Family Services, Dr. Brown completed a "Basic Medical" form on June 1, 2005.  Dr. Brown listed Plaintiff's diagnoses as dyspnea, chest pain, anxiety, dizziness, asthma, chronic bronchitis, dysthymia, pancreatitis, non-insulin dependent diabetes mellitus and hyperlipidemia.  Dr. Brown indicated that Plaintiff's shortness of breath, chest pain, anxiety, and dizziness, prevent her from working.  He concluded that Plaintiff is to be considered totally and permanently disabled, unemployable, and that her conditions are expected to last for 12 months or more.  (Tr. 220-21).

**Jennifer L. Scott, Psy. D.**

On behalf of the Ohio Bureau of Disability Determination ("BDD"), Dr. Scott examined Plaintiff on July 9, 2005.  (Tr. 188-93).  Plaintiff reported that she last drank one month prior to the examination.  (Tr. 189).  Plaintiff also reported that she sits on the couch watching television, spends time with her kids, rarely leaves her house, and performs some household chores.  (Tr. 190). Plaintiff was reported to be cooperative, had no loose associations or flight of ideas, and was organized.  *Id.*  She was depressed and mildly anxious, and denied suicidal ideation. (Tr. 189-90).  Plaintiff had no obsessions, compulsions, delusions, or hallucinations.  (Tr. 190).  She was alert and oriented, her memory was intact, her attention and concentration skills were adequate, and her judgment was intact.  (Tr. 191).  Dr. Scott diagnosed Plaintiff with a major depressive

5

disorder, recurrent, moderate; anxiety disorder NOS; and alcohol dependence.  He assigned a GAF score of 55[2].  (Tr. 192-93).  Dr. Scott opined Plaintiff was moderately impaired in her ability to interact with supervisors or coworkers; mildly to moderately impaired in her ability to understand, remember, and follow simple instructions; mildly impaired in her ability to maintain attention, concentration, persistence, and pace; and moderately impaired in her ability to withstand the stress and pressures of day to day work activity.  (Tr. 193).

**John S. Waddell, Ph.D.**

Dr. Waddell reviewed the record on behalf of the Ohio BDD on August 3, 2005.  (Tr. 195-208).  Dr. Waddell opined that Plaintiff had mild restrictions in the activities of daily living; moderate difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation.  (Tr. 205).  Dr. Waddell concluded that Plaintiff would do best in low stress jobs that did not involve frequent interaction with others.  (Tr. 211).  Jennifer E. Swain, Psy. D. affirmed Dr. Waddell's assessment in November 2005.  *Id.*

**Shirelle Applin, M.D.**

---

[2]Health care clinicians perform a Global Assessment of Functioning ("GAF") to determine a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness.  It is, in general, a snapshot of a person's "overall psychological functioning" at or near the time of the evaluation.  *See Hash v. Comm'r of Social Security*, 309 Fed. Appx. 981, 988 n.1 (6th Cir. 2009); *see also* Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision at pp. 32-34.  A GAF of 51-60, refers to "moderate symptoms . . . or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Id.*

Dr. Applin, a pulmonologist, began treating Plaintiff in January 2007.  (Tr. 279).

Dr. Applin completed a pulmonary residual functional capacity questionnaire on October

19, 2007.  (Tr. 257-60).  Dr. Applin listed Plaintiff's diagnoses as emphysema, allergic

rhinitis, GERD, depression, anxiety, and hypertension.  (Tr. 257).  Dr. Applin reported

that Plaintiff was not a malingerer and that emotional factors affected her condition.  (Tr.

258).  Dr. Applin also reported that Plaintiff's medicine causes fatigue, dizziness, and an

upset stomach.  *Id.*  Plaintiff had a poor prognosis.  Dr. Applin opined that Plaintiff could

sit and stand less than two hours in a work day, could rarely lift 10 pounds, and should

avoid cleaning agents, fumes, odors, and gases.  *Id.*  (Tr. 259).  According to Dr. Applin,

Plaintiff would miss more than four days of work a month,  (Tr. 260), and is incapable of

tolerating even "low stress" jobs.  (Tr. 258).

### Medical Expert (ME) Testimony

Dr. Laura Rosch testified at the administrative hearing as the ME concerning

Plaintiff's physical impairments.  (Tr. 296).  Dr. Rosch testified that Plaintiff has several

medical impairments, including chronic asthma, flares of bronchitis, and obstructive lung

disease.  (Tr. 297).  Dr. Rosch noted that Plaintiff has a history of alcohol abuse that

likely is associated with acute episodes of pancreatitis and associated abdominal bloating

and pain, but did not appear to be a current issue.  (Tr. 297).  Dr. Rosch opined that

Plaintiff's physical impairments do not meet or equal any listing.  (Tr. 298).  She

considered the listing for asthma, Listing 3.03.  *Id.*  Dr. Rosch further opined that Plaintiff

could do light work but she would need to avoid concentrated exposure to fumes, odors, dusts, and gases.  (Tr. 298-99).

When cross-examined by Plaintiff's counsel, Dr. Rosch acknowledged that light work would require standing six hours a day, and sitting for two, but believed Plaintiff could perform such tasks.  (Tr. 299).

Dr. David Biscardi testified at the administrative hearing as the ME concerning Plaintiff's mental impairments.  (Tr. 300).  Dr. Biscardi found there was insufficient evidence in the record to provide an opinion about Plaintiff's mental limitations.  (Tr. 300-02).

### Mark D. Hammerly, Ph.D.

Following the first administrative hearing, Dr. Hammerly examined Plaintiff on July 10, 2008, on behalf of the Ohio BDD, to assess her overall functioning and mental status.  (Tr. 282-90).  Dr. Hammerly noted that Plaintiff was generally cooperative and friendly; her eye contact was moderate; and her gait and posture were unremarkable.  (Tr. 284).  Plaintiff's mood was dysphoric and her affect was constricted, but she had no suicidal ideations.  *Id.*  Her thought processes were coherent, goal-directed, and logical.  *Id.*  She was not anxious, and did not have any hallucinations or delusions.  (Tr. 285).  She was alert and oriented; and her concentration, memory, and judgment were intact.  (Tr. 285-86).  Plaintiff reported that she usually sleeps all day but will occasionally be able to pick up around the house, do some laundry, drive herself to appointments, and go with her daughters to the grocery store.  (Tr. 286).

8

Dr. Hammerly reported that Plaintiff displayed symptoms consistent with major depression, recurrent, and moderate, including depressed mood most days. (Tr. 288). He also stated her symptoms included general fatigue and loss of energy; feelings of worthlessness or excessive or inappropriate guilt nearly every day; and flattened affect during the examination. *Id.* Likewise, Dr. Hammerly noted that Plaintiff "has even been fired several times for somatic-rendered depressive symptoms." *Id.* He assigned Plaintiff a GAF of 53. *Id.*

Dr. Hammerly opined that Plaintiff was moderately impaired in her ability to interact with supervisors or coworkers; not impaired in her ability to understand, remember, and follow instructions; not impaired in her ability to maintain attention, concentration, persistence, and pace to perform simple repetitive tasks; and moderately impaired in her ability to withstand the stress and pressures of day to day work activity. (Tr. 289).

## III.  Administrative Review

### A.  "Disability" Defined

The Social Security Administration provides DIB to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 423(a)(1)(D). The term "disability" – as defined by the Social Security Act – has specialized meaning of limited scope. It encompasses only those who suffer from a medically determinable physical or mental impairment severe enough to prevent them from engaging in substantial gainful activity. *See* 42 U.S.C. §

9

423(d)(1)(A); *see also Bowen*, 476 U.S. at 469-70.  A DIB applicant bears the ultimate

burden of establishing that he or she is under a "disability."  *Key v. Callahan*, 109 F.3d

270, 274 (6th Cir. 1997); *see Wyatt v. Secretary of Health and Human Services*, 974 F.2d

680, 683 (6th Cir. 1992); *see also Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir.

1978).

The term "disability" – as defined by the Social Security Act – carries a

specialized meaning of limited scope.  Narrowed to its statutory meaning, a "disability"

includes only physical or mental impairments that are "medically determinable" and

severe enough to prevent the claimant (1) from performing his or her past job, and (2)

from engaging in "substantial gainful activity" that is available in the regional or national

economies.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

### B.  Social Security Regulations

Administrative regulations require ALJs to resolve a disability claim through a

five-step sequential evaluation of the evidence.  *See* Tr. 14-15; *see also* 20 C.F.R.

§ 404.1520(a)(4).  Although a dispositive finding at any step terminates the ALJ's review,

*see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review

answers five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the Listings), 20 C.F.R. Subpart P, Appendix 1?

    4.      Considering the claimant's residual functional capacity,[3] can he perform his past relevant work?

    5.      Considering the claimant's age, education, past work experience, and residual functional capacity, can he or she perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

    **C.**    **ALJ Templin's Decision**

ALJ Templin's pertinent findings began at Step 2 of the sequential evaluation, where he concluded that Plaintiff had at least one, medically determinable, "severe" impairment, or its equivalent, based upon reviewing mental health consultants' conclusion that Plaintiff had established the threshold requirement of a "severe" mental impairment. (Tr. 16)  The ALJ also found that based upon the record in its entirety, it is insufficient to establish that Plaintiff's abuse of psychoactive substances or the existence of an anxiety disorder has been ongoing throughout the period at issue.  (Tr. 17)  The ALJ further found that based upon the medical evidence, Plaintiff had not established the threshold requirement of a "severe" physical impairment.  *Id.*

The ALJ concluded at Step 3 that Plaintiff did not have an impairment or combination of impairments that met or equaled one in the Listings.  (Tr. 18).

---

[3]The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations.  20 C.F.R. § 404.1545(a); *see Howard v. Comm'r of Social Sec*urity, 276 F.3d 235, 239 (6th Cir. 2002).

At Step 4, ALJ Templin concluded that Plaintiff retained the residual functional capacity to perform light work[4], except, she could not work in environments that would result in concentrated exposure to pulmonary irritants; perform tasks requiring judgment or understanding, remembering, or carrying out complex or detailed tasks on a sustained basis.  (Tr. 18).

The ALJ concluded at Step 4 that Plaintiff was unable to perform her past relevant work as a mail handler, data entry clerk, production weigher or waitress.  (Tr. 22-23).

At Step 5, the ALJ used section 202.21 of the Grid as a framework for deciding, and considering Plaintiff's age, education, work experience, and residual functional capacity; and found there are jobs that exist in significant numbers in the national economy that Plaintiff can adapt and perform on a sustained basis.  (Tr. 23).

The ALJ's findings throughout his sequential evaluation led him to ultimately conclude that Plaintiff was not under a disability, and she was therefore not eligible for DIB.  (Tr. 24).

### D.    The Appeals Council's Decision

The Appeals Council denied Plaintiff's request for review and, accordingly, the ALJ's decision became the final decision of the Commissioner in this case. (Tr. 5).  The Council considered the reasons Plaintiff disagreed with the ALJ's decision, but ultimately

---

[4] The Regulations define light work as involving the ability to lift "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds...." 20 C.F.R. § 404.1567(b).

concluded the information did not provide a basis for changing the ALJ's decision. (Tr. 6).

IV.  **Judicial Review**

Judicial review of an ALJ's decision proceeds along two lines: " whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r. of Social Security*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r. of Social Security*, 478 F.3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings.  *Rogers v. Comm'r. of Social Security*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r. of Social Security,* 203 F.3d 388, 389-90 (6th Cir. 1999).  Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Social Security*, 375 F.3d 387, 390 (6th Cir. 2004)).  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . ." *Rogers*, 486 F.3d at 241.

The second line of judicial inquiry, reviewing the ALJ's legal criteria, may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings.  *Rabbers v. Comm'r. of Social Security*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746.  "[E]ven if supported by substantial evidence, 'a decision of the

Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r. of Social Security*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## V.    Discussion

### A.    Plaintiff's Contentions

Plaintiff assigns four errors in this case.  First, Plaintiff contends the ALJ erred by using the Grid[5] alone in denying benefits.  (Doc. #5 at 4).  According to Plaintiff, environmental limitations, as the ALJ found in this case, are also nonexertional, and the ALJ's use of the Grid is improper.  *Id.*  Next, Plaintiff argues that the ALJ erred by giving the most weight to the psychological consultative examiners.  *Id.* at 5. Plaintiff contends that the ALJ failed to give the most weight, even if not controlling weight, to Drs. Brown and Applin.  *Id.* at 6.  Third, Plaintiff contends that the ALJ failed to properly evaluate Plaintiff's credibility.  Finally, Plaintiff argues that in addition to erring in using the Grid alone to deny benefits, the ALJ also erred vocationally and did not carry his step 5 burden of showing other work for Plaintiff under 20 CFR 404.1520.  According to Plaintiff, the ALJ did not obtain any specific jobs that she could perform from the vocational expert in spite of finding pulmonary and mental impairments, and the restrictions based from these impairments.  *Id.* at 8-9.

---

[5]*See* Medical-Vocational Guidelines, 20 C.F.R. Subpart P, Appendix 2.

### B.    Medical Source Opinions

### 1.

### Treating Medical Sources

The treating physician rule, when applicable, requires the ALJ to place controlling weight on a treating physician's or treating psychologist's opinion rather than favoring the opinion of a nonexamining medical advisor or a one-time examining physician or psychologist or a medical advisor who testified before the ALJ. *Blakley,* 581 F.3d at 406 (6th Cir. 2009); *see Wilson*, 378 F.3d at 544 (6th Cir. 2004).  A treating physician's opinion is given controlling weight only if it is both well supported by medically acceptable data and if it is not inconsistent with other substantial evidence of record.  *Id.*

"If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of the examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley,* 581 F.3d at 406 (citing *Wilson*, 378 F.3d at 544).

More weight is generally given to the opinions of examining medical sources than is given to the opinions of non-examining medical sources.  *See* 20 C.F.R. § 404.1527(d)(1).  Yet the opinions of non-examining state agency medical consultants have some value and can, under some circumstances, be given significant weight.  This occurs because the Commissioner views such medical sources "as highly qualified

physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act."  Social Security Ruling 96-6p. Consequently, opinions of one-time examining physicians and record-reviewing physicians are weighed under the same factors as treating physicians including supportability, consistency, and specialization.  *See* 20 C.F.R. § 404.927(d), (f); *see also* Ruling 96-6p at *2-*3.

**2.**

**<u>Non-Treating Medical Sources</u>**

The Commissioner views non-treating medical sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act."  Social Security Ruling 96-6p, 1996 WL 374180 at *2.  Yet the Regulations do not permit an ALJ to automatically accept (or reject) the opinions of a non-treating medical source.  *See id.* at *2-*3.  The Regulations explain, "[i]n deciding whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive." 20 C.F.R. § 404.1527(b).  To fulfill this promise, the Regulations require ALJs to evaluate non-treating medical source opinions under the factors set forth in § 404.1527(d), including, at a minium, the factors of supportability, consistency, and specialization.  *See* 20 C.F.R. § 404.1527(f); *see also* Ruling 96-6p at *2-*3.

C.  <u>**Analysis**</u>

**1.**

16

Plaintiff first argues that the ALJ improperly applied the Medical-Vocational Guidelines.  The Commissioner employs the Medical-Vocational Guidelines, also referred to as the "Grid," in the fifth and final stage of the disability determination, after it has been determined that the claimant has not met the requirements of a listed impairment, but is nevertheless incapable of performing past relevant work.  At this point, the Commissioner bears the burden of demonstrating that, notwithstanding the claimant's impairment, she retains the residual functional capacity to perform specific jobs existing in the national economy.  *Cole v. Secretary of Health & Human Services*, 820 F.2d 768, 771 (6th Cir.1987); *Richardson v. Secretary of Health & Human Services*, 735 F.2d 962, 964 (6th Cir.1984).

Where a claimant suffers from an impairment limiting only her strength, the Commissioner can satisfy his burden, without considering direct evidence of the availability of jobs the particular claimant can perform, through reference to the Grid. *Abbott v. Sullivan,* 905 F.2d 918, 926 (6th Cir. 1990).  The Grid aids the Commissioner in determining disability claims by allowing "administrative notice" to be taken of the existence of jobs in the national economy that those with particular combinations of the four statutory factors are capable of performing.  *Id.,* citing, *Kirk v. Secretary of Health & Human Services,* 667 F.2d 524, 529 (6th Cir. 1981), *cert. denied,* 461 U.S. 975 (1983). The ALJ applied rule 202.21, and found her "not disabled."  Rule 202.21 states that where "[m]aximum sustained work capability [is] limited to light work as a result of severe medically determinable impairment(s)," Plaintiff is under 50 years of age, has at

17

least a high school education, and has experience performing semiskilled work—skills not transferable, a finding of "not disabled" is directed. The Court, however, finds that Plaintiff's argument has merit. In determining Plaintiff's residual functional capacity, the ALJ found nonexertional restrictions. The application of the light work Grid was therefore erroneous because Plaintiff's nonexertional restrictions were not properly considered in determining whether she could perform the full range of light work. In addition, although the ALJ consulted a vocational expert regarding Plaintiff's physical restrictions, he decided to continue the hearing until after Plaintiff could visit a mental health professional for an evaluation, (Tr. 336-38), but then failed to hold another hearing with the VE regarding any of Plaintiff's mental impairments. *See Abbott*, 905 F.2d at 927 ("The ALJ did consult a vocational expert; however, it appears that the VE was never made aware of Abbott's severe mental impairments. Under such circumstances, his testimony cannot satisfy the Secretary's burden of proof at the final stage of the disability determination.").

### 2.

When weighing the medical source opinions, the ALJ noted, "I find the opinions of the medical expert, as well as those of the reviewing mental health consultants to the DDS the most persuasive of record (20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p)." (Tr. 18). A review of the ALJ decision reveals no indication that the ALJ applied the two-step evaluation procedure to the treating physicians' opinions. Although the ALJ did not wholly ignore the opinions of Plaintiff's treating physicians – Drs. Brown

and Applin – the ALJ's decision cannot be reasonably read as first determining whether their respective opinions were due controlling weight, and if not, determining next whether the treating physician's opinion was due any weight.  *See* Tr. 18-20.  As stated in a Ruling, the Commissioner instructs:

> Adjudicators must remember that a finding that a treating source is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that it is not entitled to 'controlling weight,' not that the opinion must be rejected.  Treating source medical opinions must still be weighed using all of the factors provided in 20 C.F.R. 404.1527.  In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

Social Security Ruling 96-2p, 1996 WL 374188 at *4.

> In discussing the opinion of Dr. Brown, the ALJ determined the following:

> In May 2005, the claimant's former primary care physician (Harold Brown, D.O.) completed an assessment of claimant's ability to perform work or work-like activities based on her impairments (Exhibit 6F).  Dr. Brown asserted that, in an 8 hour work day claimant could not sit, stand, or walk at all.  He opined that she could not alternately sit or stand even if she had the opportunity to change positions at will.  He further opined that claimant is completely incapable of grasping, pushing, pulling, or performing fine manipulation.  Dr. Brown opined that the claimant is unable to use her feet for repetitive movements, as in operating foot controls.  He opined that she is unable to reach with her upper extremities above shoulder level.  He further asserts that claimant cannot lift even 10 pounds at a time.  If as limited as described (i.e., a bedridden invalid), Dr. Brown's assertions that the claimant "should be considered totally, permanently disabled" and that her "health status is poor," would be obvious and credible.  His assertion that her condition "is deteriorating" in light of his description of her functioning, suggests that she would be disabled under the Regulations, regardless of the duration of her severe impairments (20 CFR 404.1505).

19

(Tr. 18).  The ALJ continued that Dr. Brown's conclusions are not supported by his

clinical findings or the absence of aggressive intervention.  (Tr. 19).  The ALJ also found

that Dr. Brown's assessment was inconsistent with Plaintiff's testimony.  *Id.*

In discussing Dr. Applin's opinion, the ALJ noted the following:

The claimant has been referred for treatment of her respiratory condition to
a specialist.  The claimant's treating pulmonologist (Shirelle Applin, M.D.)
opined on October 19, 2007 that, due to asthma, the claimant would
frequently experience pain or other symptoms severe enough to interfere
with attention and concentration needed to perform even simple work tasks.
That doctor opined that the claimant was incapable of performing even
"low stress" jobs, because her severe emphysema is worsened by mental
stress.  That doctor noted that side effects of her medications would cause
claimant to suffer fatigue, dizziness, and stomach upsets.  Dr. Applin stated
that claimant was unable to walk even one block without severe pain or the
need to rest, and stated that the claimant retained the capacity to sit for more
than two hours at one time.

In another part of the form, the doctor opined that the [sic] could stand 10
minutes at one time, but that she could sit/stand/walk in combination for
less than 2 hours in an 8 hour workday.  The doctor then stated claimant
required an hourly break and, thereafter, would not be able to return to her
job (on average) for at least another hour.  Interestingly, during this one
hour break, the claimant would need to sit quietly.  Aside from the logical
inconsistencies, Dr. Applin's assessment varied significantly from the
assessment by the claimant's primary care physician.

Dr. Applin opined that the claimant should only rarely lift less than 10
pounds at a time, and should never lift up to or more than that amount of
weight.  That doctor opined that she should rarely twist, stoop, bend, or
climb stairs, and that she should never crouch, squat, or climb ladders.
More plausibly, that doctor opined that claimant should avoid all exposure
to extreme cold, heat, high humidity, wetness, cigarette smoke, perfumes,
soldering fluxes, solvents, cleaners, fumes, odors, gases, dust, and
chemicals.  Although there is no indication in this record that the claimant's
home would be that sterile an environment, the doctor opined that the
claimant would have good and bad days and that, on average, she likely
would be absent from work more than four days per month (Exhibit 9F).

20

(Tr. 19).  Even viewing the ALJ's decision most favorably for the Commissioner, the most that can be taken from the ALJ's decision is that he applied isolated regulatory factors (supportability and consistency) to the opinions of Plaintiff's treating physicians, Drs. Brown and Applin.  *See* Tr. 18-20. This analytical approach, however, does not comply with the mandatory two-step weighing procedure dictated by the Regulations, 20 C.F.R. § 404.1527(d)(2)-(5), and by Social Security Ruling 96-2p.  As the United States Court of Appeals for the Sixth Circuit emphasizes – even when the treating physician rule does not apply, "in all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference, its non-controlling status notwithstanding." *Rogers*, 486 F.3d at 242.

The ALJ's isolated consideration of certain regulatory factors, rather than the mandatory two-step weighing procedure, also deprived the ALJ's decision of a good explanation of the reasons why he rejected the opinions of treating physicians, Drs. Brown and Applin.  *See* Tr. 18-20; *see also Rogers*, 486 F.3d at 242.  This was no minor deficiency in the decision given the rationale underlying the reason-giving requirement:

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she [or he] is not, unless some reasons for the agency's decision is supplied.... <u>The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.</u>

*Wilson*, 378 F.3d at 544-45 (emphasis added)(citations and internal punctuation omitted).

In this case, Plaintiff argues that Dr. Brown's opinions are supported by his long-term treatment relationship with Plaintiff, his referral to Dr. Applin (a specialist) in an effort to enhance Plaintiff's treatment, and his prescription of medication to treat her symptoms.  In contrast, the Commissioner contends Dr. Brown's and Dr. Applin's opinions are not supported by objective medical findings.  Both parties argue that the objective and clinical evidence support their respective positions.  The problem here is that the ALJ failed to reveal his rationale for rejecting their opinions.

In summary, the two physicians who had the most contact with Plaintiff, Dr. Brown, the family practice physician for Plaintiff, and Dr. Applin, the pulmonologist, both concluded that Plaintiff was disabled.  Dr. Applin's concurrence with Dr. Brown's opinion gives it considerable weight.

There remains the possibility that the ALJ's errors in not applying the required legal criteria as just described were harmless.  (Doc. #5 at 7).  *See Bowen*, 478 F.3d at 747-49.  However, "[a] court cannot excuse the denial of a mandatory procedural requirement protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely.  '[A] procedural error is not made harmless simply because the [aggrieved party] appears to have had little chance of success on the merits anyway.'  To hold otherwise, and to recognize substantial evidence as a defense to non-compliance with § 404.1527(d)(2), would afford the Commissioner the ability to violate the regulation with impunity and render the protections promised therein illusory.

22

The general administrative law rule, after all, is for a reviewing court, in addition to whatever substantive factual or legal review is appropriate, to 'set aside agency action ... found to be ... without observance of procedure required by law.'" *Wilson*, 378 F.3d at 546 (internal citations omitted).

Accordingly, the ALJ's errors when evaluating the opinions of Dr. Brown and Dr. Applin were not harmless due to Plaintiff's lengthy history of breathing problems.  Much of the medical evidence supports the disability opinions provided by these treating medical sources, particularly due to the long-term, recurrent, and serious nature of Plaintiff's objectively documented breathing impairments.  Consequently, the ALJ's errors were not harmless.  *See Bowen*, 478 F.3d at 747-48; *Wilson*, 378 F.3d at 546-47.

For all the above reasons, Plaintiff's challenges to the ALJ's evaluation of the medical source opinions are well taken.[6]

## VI.  <u>**Remand Is Warranted**</u>

If an ALJ failed to apply the correct legal standards or his factual conclusions are not supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits.  Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991).  Remand is appropriate if the Commissioner applied an erroneous

---

[6]In light of the above review, and the resulting need for remand of this case, an in-depth analysis of Plaintiff's remaining contentions is unwarranted.

principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case, because the evidence of disability is not overwhelming, and because the evidence of a disability is not strong while contrary evidence is weak. *See Faucher*, 17 F.3d at 176. Plaintiff, however, is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of § 405(g), due to the errors outlined above. On remand, the ALJ should be directed (1) to re-evaluate the medical source opinions under the legal criteria set forth in the Commissioner's Regulations, Rulings, and as required by case law; and (2) to reconsider, under the required sequential evaluation procedure, whether Plaintiff was under a disability and thus eligible for DIB. Accordingly, the case should be remanded to the Commissioner and the ALJ for further proceedings consistent with this Report and Recommendations.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Greta K. Cloud was under a "disability" within the meaning of the Social Security Act;

3. This case be **REMANDED** to the Commissioner and the Administrative Law Judge under Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent with this Report; and

4. The case be terminated on the docket of this Court.

24

_____December 28, 2011                              _____s/ Sharon L. Ovington_____
                                                     Sharon L. Ovington
                                                     United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen (14) days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen (17) days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See, United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).